IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-235-FL

| | | |
|---|---|---|
| BARBARA J. McGATHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Barbara J. McGathy ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 17, 23. Both filed memoranda in support of their respective motions. D.E. 17-1, 24. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 18 Nov. 2016 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 26 December 2012, alleging a disability onset date of 1 March 2012. Transcript of Proceedings ("Tr.") 37. The application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 37. On 7 November 2014, a video hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by a nonattorney representative, and a vocational expert testified. Tr. 55-82. The ALJ issued a decision denying plaintiff's claims on 13 March 2015. Tr. 37-47. Plaintiff timely requested review by the Appeals Council. Tr. 31-32. On 1 April 2016, the Appeals Council admitted additional evidence submitted by plaintiff, a decision by the North Carolina Department of Health and Human Services ("NCDHHS") dated 3 March 2014 finding plaintiff entitled to disability-based Medicaid benefits effective May 2013 (Tr. 412-15), but denied the request for review. Tr. 1, 2, 5.

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. On 6 May 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. § 405(g). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 6); Compl. (D.E. 7).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a

disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]

---

[2] *See also* 20 C.F.R. § 404.1545(a)(1).

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds [his RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C.    ALJ's Findings

According to plaintiff's testimony, she was 49 years old on the alleged onset date of disability and 52 years old on the date of the hearing. *See* Tr. 61. Plaintiff testified that she completed the ninth grade and attended a subsequent class, but did not pass the GED test. Tr. 61-62, 72-73. The ALJ found that plaintiff had past relevant work as a cashier. Tr. 46 ¶ 6. "She performed the work, per her testimony, within the hospital setting[5] where working a cash register[] encompassed at least part of her day from 1998 through [March] 2012 . . . ." Tr. 46 ¶ 6; Tr. 74 (plaintiff's testimony that her employment at the hospital terminated in March 2012). Plaintiff testified that after leaving the hospital job, she worked four hours per week for about ten months at a delicatessen. Tr. 63, 76.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 39 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative

---

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

[5] The specific setting was food preparation and service at the hospital. Tr. 64.

disc disease in the lumbar spine, obesity, status post left hip replacement, and depression. Tr. 39 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 39 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> [T]he undersigned finds that the claimant has the [RFC] to perform a range of light work as defined in 20 CFR 404.1567(b).[6] The claimant is capable of lifting and carrying or pushing and pulling 20 pounds occasionally and 10 pounds frequently; never climbing ladders, ropes, and scaffolds; occasionally stooping, kneeling, crouching, crawling, balancing, and climbing ramps or stairs. She is to avoid concentrated exposure to moving machinery and unprotected heights. She is further restricted to simple, routine, and repetitive tasks ["SRRTs"].

Tr. 41 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was able to perform her past relevant work as a cashier as actually and generally performed. Tr. 46-47 ¶ 6. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 1 March 2012, through the date of the decision, 13 March 2015. Tr. 47 ¶ 7.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently

explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be reversed and remanded for a new hearing on the grounds that the ALJ erred in (1) assessing her mental impairments; (2) handling certain medical opinion evidence; and (3) handling plaintiff's use of a cane. Because the court finds the first two issues are dispositive of this appeal, the court's analysis will focus on them.

## IV. ALJ'S ASSESSMENT OF PLAINTIFF'S MENTAL IMPAIRMENTS

### A. Applicable Legal Principles

In determining a claimant's RFC, Social Security Ruling 96-8p, 1996 WL 374184 (2 July 1996) requires the ALJ to perform a function-by-function analysis. The ruling states that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." *Id.*, 1996 WL 374184, at *1. However, the Fourth Circuit has declined to adopt a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis. *Mascio*, 780 F.3d at 636. Rather, "'remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis by a state agency consultant. *See, e.g., Linares v. Colvin*, No. 5:14–CV–00120, 2015 WL 4389533, at *3 (W.D.N.C. 17 July 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-

function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96–8p." (citing *Lemken v. Astrue*, No. 5:07–CV–33–RLV–DCK, 2010 WL 5057130, at *8 (W.D.N.C. 26 July 2010))).

Concentration, persistence, or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Listing 12.00C3. It is one of four broad functional areas assessed using the special technique for mental impairments under the Regulations. *See* 20 C.F.R. § 404.1520a. *Mascio* instructs that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The court reasoned:

> [T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

*Id.* The court recognized that a claimant's limitation in concentration, persistence, or pace may not translate into a limitation in the RFC, but held that the ALJ must explain if that is the case. *Id.* In the absence of such an explanation, remand is in order. *Id.*; *see also, e.g.*, *Herren v. Colvin*, No. 1:15-cv-00002-MOC, 2015 WL 5725903, at *5-7 (W.D.N.C. 20 Sept. 2015).[7]

**B.     Analysis**

At step three of the sequential analysis, applying the special technique for mental impairments, the ALJ found that plaintiff had moderate difficulty maintaining concentration, persistence, or pace. Tr. 40 ¶ 4. Plaintiff argues that, under *Mascio*, the restriction of plaintiff in

---

[7] Although *Mascio* was decided on 18 March 2015, five days after the ALJ issued his decision, the ALJ's decision did not become the final decision of the Commissioner until long after issuance of the *Mascio* decision, on 1 April 2016, when the Appeals Council denied review. This case therefore does not present an issue of retroactive application of *Mascio*.

the RFC determination to SRRTs and the other limitations imposed does not adequately account for the moderate limitation in concentration, persistence, or pace and that the ALJ does not explain why the limitation in concentration, persistence, or pace does not affect her ability to work. In response, the Commissioner argues that *Mascio* is inapplicable because, unlike there, the ALJ in this case posed a hypothetical to the vocational expert that did include plaintiff's mental impairments. Alternatively, the Commissioner contends that the ALJ did explain why the limitation in concentration, persistence, or pace did not translate into a limitation in the RFC. The court agrees with plaintiff.

As to the ALJ's hypotheticals, the first one included all the limitations in the RFC determination other than the limitation to SRRTs, and the second all the limitations in the RFC determination. Tr. 79-81. Neither addressed plaintiff's limitation in concentration, persistence, or pace. In response to both, the vocational expert stated that the hypothetical individual could perform plaintiff's prior occupation as a cashier, along with three other occupations. Tr. 79-81. The third and fourth hypotheticals arguably did account for plaintiff's limitation in concentration, persistence, or pace. They were the same as the first hypothetical, but provided, respectively, that the hypothetical individual would be off track for more than ten percent of the workday in addition to regularly scheduled breaks and that the hypothetical individual would consistently miss at least two days of work per month on an unexcused or unscheduled basis. Tr. 81. In response to both of these hypotheticals, the vocational expert testified that no competitive work would be available to the hypothetical individual. Tr. 81.

Thus, the hypothetical eliciting the testimony upon which the ALJ relied did not contain any limitation addressing the moderate limitation in concentration, persistence, or pace the ALJ found, just as in *Mascio*. While the ALJ did pose hypotheticals arguably addressing the

limitation in concentration, persistence, or pace, the ALJ did not rely on the resulting testimony. The Commissioner's argument regarding the ALJ's hypotheticals therefore fails.

The Commissioner's alternative contention that the ALJ did explain the omission from the RFC of a concentration, persistence, or pace-related limitation is also meritless. There is certainly no express discussion by the ALJ of how his RFC determination accommodates plaintiff's moderate limitation in concentration, persistence, or pace.

The ALJ's step three finding that plaintiff had such limitation provided no insight into the issue. It reads simply: "With regard to concentration, persistence or pace, the claimant has moderate difficulties. The evidence supported no more than moderate restrictions." Tr. 40 ¶ 4. In apparent explanation of all of his special technique findings, the ALJ stated:

> The claimant's testimony and medical evidence supported restrictions in her capacities primarily related to her physical conditions and less upon her mental health issues. She received limited intervention aside from intermittent assistance from medication management for mental health problems. There is no evidence of long-term decompensation, regular counseling, or even consistent medication management in the records. Additional explanation provided below.

Tr. 40-41 ¶ 4. Again, no illumination on why the limitation in concentration, persistence, or pace are not accommodated in the RFC determination.

The Commissioner contends that, through the ALJ's discussion of various evidence of record, the ALJ effectively explained why plaintiff's limitation in concentration, persistence, or pace did not affect her ability to work. For example, she points to the ALJ's observations that treating physician's assistant Rochelle L. Carson, PA-C found plaintiff not to have any limitation in concentration, persistence, or pace (Tr. 46 ¶ 5 (referencing Tr. 530, 545)) and that in his 13 May 2013 consultative psychological evaluation of plaintiff, licensed psychological associate David C. Johnson, M.A. found that plaintiff might be exaggerating some of her symptoms and diagnosed her with possible malingering (Tr. 45 ¶ 5 (referencing Tr. 475)). These facts, though,

do not relate specifically to plaintiff's ability to work despite a limitation in concentration, persistence, or pace, but concern more fundamentally whether plaintiff had any limitation in concentration, persistence, or pace in the first place. The ALJ, of course, resolved the latter issue by finding that she had a moderate limitation in this area.

The Commissioner also points to the purported opinion by LPA Johnson, as stated by the ALJ, that "despite [plaintiff's] presentation of problems, she would be capable of performing [SRRTs] with adequate social skills." Tr. 45 ¶ 5 (referencing Tr. 476). The ALJ gave "significant weight" to his opinion. Tr. 45 ¶ 5. Contrary to the ALJ's implication, LPA Johnson did not make a blanket assertion that plaintiff could perform SRRTs. Rather, he stated:

> Barbara McGathy appears capable of understanding instructions adequately to perform simple, routine, and repetitive tasks. She demonstrates adequate social skills and the ability to interact appropriately with others.

Tr. 476. Thus, he stated simply that plaintiff had the intellectual capacity and social skills for SRRTs. He did not address in this finding whether she has sufficient capacity for concentration, persistence, or pace to perform SRRTs. This determination by LPA Johnson therefore does not provide an explanation as to why the ALJ's RFC determination does not address plaintiff's limitation in concentration, persistence, or pace.

The Commissioner also cites benign findings discussed by the ALJ regarding plaintiff's mental functions other than concentration, persistence, or pace, such as memory, intelligence, and speech. Tr. 45 ¶ 5; 46 ¶ 5 (referencing collectively, *e.g.*, Tr. 475, 530, 535, 539, 545). But the issue here is plaintiff's concentration, persistence, or pace, not these other capacities.

The Commissioner, understandably, does not cite to the ALJ's discussion of the 21 May 2013 findings of nonexamining state agency consulting psychologist Sharon J. Skoll, Ph.D. regarding plaintiff's ability to work. *See* Tr. 115-16. As stated by the ALJ, Dr. Skoll found that

plaintiff "retained [the] ability to perform simple routine tasks in a low stress environment." Tr. 46 ¶ 5. Dr. Skoll's own words were that "[e]vidence supports the [claimant] is able to sustain the mental demands of unskilled work in a low stress, and low production environment." Tr. 116. Dr. Skoll had previously found, like the ALJ, that plaintiff had moderate difficulties in concentration, persistence, or pace. Tr. 116. Thus, contrary to the ALJ, Dr. Skoll did include in his RFC determination limitations responsive to the moderate limitation in concentration, persistence, or pace he found plaintiff to have.

Notably, the ALJ did not state the weight he gave Dr. Skoll's opinion. Much as in *Mascio*, the ALJ appeared to frame a sentence stating the weight he accorded Dr. Skoll's opinion, possibly together with the opinion of another consultant, but he failed to make it meaningful. *See Mascio*, 780 F.3d at 637. The ALJ stated: "These opinions had consideration." Tr. 46 ¶ 5.

The court concludes that the ALJ erred by omitting from his RFC determination limitations accounting for the moderate limitation in concentration, persistence, or pace he found plaintiff to have and not adequately explaining the omission. This deficiency alone requires remand of this case.

## V.     ALJ'S HANDLING OF OPINION EVIDENCE

### A.     Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ must consider all medical opinions in a case in determining

whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. § 404.1527(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at \*3 (W.D. Va. 12 Mar. 2015), *rep. & rec. adopted*, 2015 WL 1810173, at \*1 (W.D. Va. 21 Apr. 2015); *Napier v. Astrue*, Civ. No. TJS–12–1096, 2013 WL 1856469, at \*2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. § 404.1527(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g.*, *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at \*3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Similarly, the factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"). *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at \*2, 4 (9 Aug. 2006); *see also* 20 C.F.R. § 404.1513(d) (partial listing of "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at \*6; *Napier*, 2013 WL

1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

### B.    Analysis

Plaintiff contends that the ALJ committed reversible error by not stating the weight he gave an opinion of her treating orthopedist, Bradley J. Broussard, M.D. The court agrees.

Dr. Broussard first saw plaintiff on 17 November 2011 for left hip pain. Tr. 440-41. On 19 December 2011, he performed a total left hip replacement on her. Tr. 442-43, 446-48. He had follow-up visits with her on 31 January 2012 (Tr. 444), 28 February 2012 (Tr. 438), and 10 April 2012 (Tr. 436-37).

At the February 2012 visit, Dr. Broussard cleared plaintiff to work effective 1 March 2012: "Return to work starting Thursday, 3/1/12." Tr. 438. However, at the April 2012 visit, Dr. Broussard noted the following:

> The patient is in today with some complaints of pain in and around her left hip. She tried to go back to work [at the hospital], but unfortunately she says that it

was just too much. She has to stand throughout most of her 8 hour shift and this was too much on her hip. She is having to call in sick and says she has been terminated from her job.

Tr. 436; *see also* Tr. 74 (plaintiff's testimony that she returned to her job at the hospital for about two months after her hip surgery, but her employment there terminated in March 2012). As noted, plaintiff's job included work as a cashier, the same occupation the ALJ found plaintiff able to return to. *See* Tr. 46-47 ¶ 6 (finding that plaintiff's employment included work as a cashier through 2012 and that she is able to perform this work as actually and generally performed).

In describing his plan for plaintiff, Dr. Broussard stated:

In regards to working, *I talked with her about looking for other jobs that are possibly a bit more sedentary.* She says she is already looking. I do not see anything in regards to the prosthesis that look any different than they did a few months ago. *I feel she probably just overdid it a bit about trying to go back and do a regular job.*

Tr. 436 (emphasis added). It is Dr. Broussard's recommendation to plaintiff that she "look[] for other jobs that are possibly a bit more sedentary" that is at issue. Tr. 436.

The ALJ refers to this recommendation several times in his decision. The initial references are in the ALJ's description of the history of plaintiff's hip impairment:

The medical records identified a history of back and left lower extremity pain treated with a hip replacement in December 2011. She initially recovered well from the hip replacement but in [April][8] 2012, . . . she reported ongoing pain and difficulties performing her regular duties requiring her to stand the majority of her workday. *Her doctor recommended finding "a bit more sedentary" job* but noted no issues in her prosthesis (Exhibit 1F, 2F). The claimant had an absence of treatment for roughly one year before seeing a physician assistant. The lack of need for medical treatment or even emergency medical assistance secondary to pain or other complications suggested her condition remained stable consistent with her post-op reports and *her doctor's recommendation for work doing something requiring a little less standing and walking.*

Tr. 42 ¶ 5 (emphasis added).

_____

[8] The ALJ misstates the month as May.

16

The ALJ also references Dr. Broussard's statement in explaining why he attributed "limited probative value" to the 11 June 2013 assessment by a physician's assistant treating plaintiff, Jennifer Best, PA-C, that she was restricted "to standing for 15-minute periods but precluded from standing at all during the workday." Tr. 43 ¶ 5 (referencing Tr. 477). The ALJ stated:

> Notably, *the claimant's orthopedist* returned her to work in March 2012 and *otherwise suggested she could perform a job that was a bit more sedentary when she reported difficulties with her previous job* (Exhibit 2F/1-3).

Tr. 43 ¶ 5 (emphasis added).

As can be seen, nowhere does the ALJ state the weight he attributed to Dr. Broussard's statement that plaintiff should seek more sedentary work. The Commissioner argues that the omission was not erroneous because the statement is not a medical opinion within the meaning of the Regulations and the ALJ was therefore not required to explain the weight he accorded it. Alternatively, the Commissioner contends that any error by the ALJ in not explaining the weight accorded was harmless. The court rejects both arguments.

Dr. Broussard's statement clearly does qualify as a medical opinion. Again, medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Dr. Broussard's statement reflects his judgment about what plaintiff can still do despite her hip impairment. His judgment was that she should do work more sedentary than she was doing. The ALJ was therefore required to explain the weight he accorded Dr. Broussard's opinion, and his failure to do so was error.

The court also rejects the Commissioner's alternative contention that the ALJ's error was harmless. *See, e.g., Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Pulliam v. Colvin*, No. 1:13-cv-176, 2016 WL 843307, at *4 (M.D.N.C. 1 Mar. 2016) (holding that error in ALJ's failure to expressly weigh treating physician's medical opinion was not harmless and warranted remand). Dr. Broussard's opinion could reasonably be accorded significant weight. Not only is he a specialist in the field implicated by plaintiff's hip impairment, orthopedics, but he is the surgeon who performed her hip replacement and provided follow-up care. Moreover, as indicated, the opinion related directly to the occupation the ALJ found plaintiff capable of performing. The evidence supporting Dr. Broussard's opinion includes the opinion of PA Best previously referenced (Tr. 477); the 6 May 2014 opinion of PA Carson that plaintiff was limited to sedentary work (Tr. 610 ¶¶ 5, 6); and, of course, plaintiff's testimony (*see, e.g.*, Tr. 65-69).

The decision by the NCDHHS awarding plaintiff Medicaid benefits also supports Dr. Broussard's opinion. Applying the Regulations relating to claims for Supplemental Security Income, which are in most respects substantively identical to those applicable to DIB claims, the NCDHHS found plaintiff limited to sedentary work. Tr. 413 ¶ 5. While not binding on the Social Security Administration, decisions by other agencies on the disability of a claimant must be considered and the weight accorded them explained.[9] *See Beck v. Colvin*, 7:15-CV-80-D, 2016 WL 3211471, at *8 (E.D.N.C. 17 May 2016) (citing, *e.g.*, Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6, 7), *mem. & rec. adopted*, 2016 WL 3361556 (9 June 2016).

The ALJ found, in accordance with the vocational expert's testimony, that plaintiff's past work as a cashier was at the light exertional level (Tr. 46 ¶ 6; 79), and the vocational expert

---

[9] The Appeals Council did not explain its assessment of the NCDHHS's Medicaid decision. On remand, the Commissioner should do so pursuant to the authorities cited.

further testified that her other past work, as a dietary aide and kitchen helper, was at the medium exertional level (Tr. 79). Based on the ALJ's finding and the vocational expert's testimony, if plaintiff were found to be limited to sedentary work, she would be unable to do any of her past relevant work. Having found that plaintiff is limited to sedentary work, the NCDHHS did determine plaintiff unable to perform any of her past relevant work, which it found to be as a fast-food worker at the medium exertional level. Tr. 414 ¶¶ 1, 4. In contrast, of course, the ALJ found that plaintiff could perform past relevant work.

Notably, given plaintiff's educational level, age, unskilled nature of her past relevant work, and potential nontransferability of her skills, a determination that she is limited to sedentary work would result in use of Medical-Vocational Guideline Rule 201.10 as a framework for decision making, assuming there continued to be nonexertional limitations in the RFC determination, or to direct a conclusion, assuming there are not any nonexertional limitations. *See, e.g.*, Medical-Vocational Guidelines Rule 200.00(a), (e)(2); Soc. Sec. Ruling 83-14, 1983 WL 31254 (1983) (use of Medical-Vocational Guidelines as a framework).[10] That rule, if applied directly, provides for a conclusion of disabled. Medical-Vocational Guidelines Rule 201.10. Thus, the court cannot dismiss as unreasonable the possibility that proper analysis of Dr. Broussard's opinion could result in a finding that plaintiff is limited to sedentary work and even the conclusion that she is disabled. Indeed, the NCDHHS reached precisely this result, concluding that given her limitation to sedentary work and her status with respect to the various vocational factors, plaintiff was disabled pursuant to Medical-Vocational Guidelines Rule 201.10. Tr. 414 ¶ 5.

---

[10] The Medical–Vocational Guidelines or grids are set out in 20 C.F.R. pt. 404, subpt. P, app. 2. They are grouped by RFC for sedentary, light, medium, and heavy or very heavy work, respectively. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (*e.g.*, none, unskilled, semiskilled, skilled, transferability of skills).

The court concludes that the ALJ committed reversible error in not explaining the weight he gave Dr. Broussard's opinion. This error is an independent basis for remand of this case.[11]

## VI. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 17) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 23) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 10 May 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review**

---

[11] Given the court's recommended disposition of this appeal on the basis of plaintiff's first two principal arguments, the court need not address plaintiff's third main contention that the ALJ erred by not including in his RFC determination the limitation that plaintiff required a cane. On remand, the Commissioner should address expressly her resolution of the issue of whether or not to include this limitation in the RFC determination. *See generally* Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *7 (2 July 1996).

of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 26th day of April 2017.

James E. Gates
United States Magistrate Judge